IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| WILLIAM JACKSON | : | CIVIL ACTION | |
| | : | NO. 11-4643 | |
| v. | : | | |
| | : | | |
| CITY OF PHILADELPHIA, et al. | : | | |

O'NEILL, J.                                                                                       May 4, 2015


## MEMORANDUM

On July 22, 2011, plaintiff William Jackson, represented by counsel, filed a complaint

against defendants the City of Philadelphia, Commissioner Louis Giorla, Warden John P.

Delaney, Correctional LT Adella Hold and Correctional Officer Damien Woodards.  Dkt. No. 1.

Plaintiff filed an amended complaint on October 11, 2011 in which he alleges violations of his

rights under the Eighth and Fourteenth Amendments to be free from excessive force and cruel

and unusual punishments and his Fourth Amendment right to be free from unreasonable searches

and seizures.  Dkt. No. 5.

Plaintiff's case was placed in suspense on December 1, 2011 pending resolution of

criminal charges against plaintiff.  Dkt. No. 9.  My Order placing the matter in suspense required

Rania Major Trunfio, counsel for plaintiff, to notify the Court when the criminal charges against

plaintiff had been resolved. Dkt. No. 9.  Although plaintiff pled guilty on December 15, 2011 to

multiple charges against him, his counsel did not inform the Court of this fact. On October 24,

2013 – more than twenty-two months later – the City wrote the Court and requested the case be

removed from civil suspense and also filed a motion for summary judgment. Dkt. Nos. 10, 11.

After numerous extensions, plaintiff responded to defendants' motion for summary judgment on

February 4, 2014.  Dkt. No. 27.  On March 27, 2014, I entered an order denying defendants'

motion for summary judgment without prejudice.  Dkt. No. 29.  In the accompanying

memorandum of law I explained that "Counsel for plaintiff obviously has neglected this case but

I do not wish to penalize Mr. Jackson for the omissions of his counsel."  Dkt. No. 28 at ECF p. 3.

Accordingly, I granted the parties "ninety days within which to conduct discovery."  Dkt. No. 29.

On December 2, 2014, defendants filed a second motion for summary judgment.  Dkt.

No. 32.  On January 12, 2015, after having approved two stipulated extensions of the time

permitted to respond, I ordered plaintiff to respond to defendants' second motion for summary

judgment on or before January 26, 2015.[1]  Dkt. No. 38.  To date, plaintiff, through his counsel

has not filed a response to defendant's motion.  Nor has his counsel submitted any further

requests for an extension of time to respond.  While I am reluctant to deprive plaintiff of the right

to have his claim adjudicated on a factual record which is less than fully developed, the time has

come.[2]  For the reasons that follow, I will grant defendant's motion.[3]

## BACKGROUND

Plaintiff was a pretrial detainee in the Philadelphia Prison System at the Curran-Fromhold

Correctional Facility from on or about June 29, 2009 until January 14, 2011 when he was

---

[1]      Also on January 12, 2015, I granted plaintiff's motion to compel a telephone
conference and ordered the Superintendent of the State Correctional Institution at Coal
Township, Pennsylvania to permit plaintiff's counsel to speak with plaintiff by means of a
telephone call initiated by plaintiff's counsel.  Dkt. No. 38.

[2]      "[A] client cannot always avoid the consequences of the acts or omissions of its
counsel."  Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863, 868 (3d Cir. 1984).  The
Court also notes that "[i]t is well established that a busy caseload generally does not constitute a
basis for a finding of excusable neglect."  Ragguette v. Premier Wines & Spirits, 691 F.3d 315,
330 (3d Cir. 2012) (citation omitted); see also Ramos v. Quien, 631 F. Supp. 2d 601, 610 (E.D.
Pa. 2008) ("Time constraints are inherent in the legal profession, and this Court will not
recognize that a heavy caseload, by itself, constitutes 'good cause' for 'excusable
neglect' . . . .").

[3]      Despite plaintiff's failure to file a response to defendants' motion for summary
judgment, I must consider the merits of the motion rather than grant it as uncontested.  See Local
R. Civ. P. 7.1(c).

sentenced in an matter unrelated to this matter and transferred to state custody. Dkt. No. 32 at ¶ 2b. On July 23, 2009 a cellmate of plaintiff's informed Correctional Sergeant Janelle Franklyn that plaintiff had drugs in his boxer shorts. Id. at ¶ 2i. Philadelphia Prison System staff, "including CO Damien Woodards, was organized to conduct a strip search of [plaintiff] and two other inmates, including the one who had tipped the SGT about [plaintiff's] hidden drugs." Id. at ¶ 2j. "During the search, CO Woodards noticed that plaintiff had something in his mouth and alerted the SGT." Id. at ¶ 2k. Plaintiff "ran out of the cell and into the yard, where he was seen removing something from his mouth and trying to put it in the drain." Id. at ¶ 2l. Plaintiff" was eventually handcuffed and taken to medical after he had assaulted CO Woodards, CO Robinson and LT Adella Holt." Id. at ¶ 2m.

Plaintiff was a pretrial detainee in the Philadelphia Prison System again from December 14, 2011 until December 15, 2011 when he pled guilty to the following charges arising out of the July 23, 2009 incident: recklessly endangering defendant CO Damien Woodards, aggravated assault on CO David Robinson, aggravated assault on defendant LT Adella Holt and possession of a controlled substance by an inmate. Dkt. No. 32 at ¶ 2a. Following his guilty plea he was transferred back to state custody and is currently an inmate housed at SCI-Coal Township. Dkt. No. 32 at ¶¶ 2a-2b.

In his amended complaint, plaintiff asserts claims for violations of his civil rights related to the events of July 23, 2009. He alleges that he was subjected "to an unlawful strip search in his cell where . . . defendants lacked reasonable suspicion to believe that the plaintiff harbored a weapon, drugs, other contraband, or other fruits, instrumentalities, or evidence of a crime or violation of prison regulations" and that "defendants were not carrying out a prison regulation and/or procedure reasonably related to institutional security, maintaining or restoring discipline

or order, or any other legitimate penological interest." Id. at ¶ 2t. He alleges that "defendants'

purpose was to harass, humiliate, degrade, and/or physically injure the plaintiff" and that it was

'the policy, practice and/or custom of Defendants, City, Delaney and Giorla' to fail to train

correctional officers 'in proper methods and protocols of searching and/or restraining inmates

within the Philadelphia Prison System and/or the Curran-Fromhold Correctional Facility."

Plaintiff has also claimed "that during the search, he was assaulted, battered and subjected to

malicious, sadistic and excessive force by CO Woodards and other prison staff while LT Holt

stood by and did nothing to stop it; and that the use of 'unjustified unreasonable, unnecessary,

malicious sadistic, and excessive force' was the policy, custom or practice of Defendants, City of

Philadelphia, Commissioner Giorla and Warden Delaney." Id. at ¶ 2u.

Plaintiff's amended complaint alleges that as a result of defendants actions (or inactions),

he

> sustained multiple serious injuries, some or all of which may be
> permanent, including, but not limited to, broken and chipped teeth;
> concussions; post-traumatic cephalgia and headaches; facial and
> lip bruising; lacerations and scarring; severe shock and injury to
> his nerves and nervous system; mental, psychological and
> emotional distress, embarrassment, anxiety and humiliation; and
> other injuries some or all of which have yet to become manifest
> and/or be diagnosed.

Dkt. No. 5 at ¶ 43. Despite the allegations in his complaint, plaintiff "has produced no

competent medical evidence of injury due to severe emotional distress." Dkt. No. 32 at ¶ 2dd.

Defendants also contend that "plaintiff has not developed any evidence that the

[Philadelphia Prison System] has an unconstitutional policy or widespread custom or practice

regarding searches of prisoners for contraband and the use of force by [Philadelphia Prison

System] staff." Id. at ¶ 2w. Instead, defendants explain that "it is the policy of the [Philadelphia

Prison System] that prison staff 'are responsible for maintaining professional deportment at all

times towards inmates,' 'will refrain from engaging in illegal behavior (while) . . . on . . . duty,'

and that '[n]o [Philadelphia Prison System staff] shall use or condone excessive or unnecessary

use of force.'" Id. at ¶ 2x. Defendants assert that the Philadelphia Prison System has a policy

"that staff will search inmates, visitors, and official visitors to deter possession, trafficking or use

of contraband items for the safety and security of its prison facilities." Id. at ¶ 2z. Defendants

contend that "[w]hen there is reason to believe that an inmate is hiding items that could be

detrimental to the safety and security of the [Philadelphia Prison System], a strip search will be

conducted in the presence of a supervisor." Id. at ¶ 2aa. The Philadelphia Prison System has a

policy "that all employees will be trained on proper search techniques." Id. at ¶ 2cc. Defendants

also assert that "[s]earches are not to be used to punish or harass inmates," instead, they are to be

conducted "to discover and suppress trafficking in contraband." Id. at ¶ 2bb.

Plaintiff received an Inmate Handbook during the intake process at the Philadelphia

Prison System which informed plaintiff that "[p]eriodic and special unannounced searches of

inmates, housing units, and other facility areas are conducted as often as needed to discover and

eliminate contraband and to ensure the safety and security of the facility." Id. at ¶ 2d (internal

quotation omitted). During the intake process plaintiff was also "made aware of [ ] inmate

grievance procedures and where they are posted." Id. at ¶ 2c. Inmates in the Philadelphia Prison

System may grieve alleged violations of their civil rights through a grievance review procedure

with two levels of review. Id. at ¶¶ 2f-2h. Under the Philadelphia Prison System policy on

inmate grievances, "[a]n inmate may file a formal written grievance **within ten days of the**

**grievable event** by completing an Inmate Grievance form . . . ." Id. at ¶ 2e (internal quotation

omitted, emphasis in Dkt. No. 32). Inmates are directed to keep copies of their grievance forms

as proof that they filed grievances. Id.

Defendants contend that there is "no record evidence that plaintiff ever filed a grievance that specifically addressed the search of his body for contraband on July 23, 2009."  Id. at ¶ 2s. Instead, on or about August 29, 2009 or September 14, 2009, plaintiff "submitted an Inmate Grievance Form (Grievance No. G092127) regarding the alleged assault by CO 'Woodard-Bey' (who is CO Woodards) on July 23, 3009.  Id. at ¶ 2p.  According to both the Philadelphia Prison System automated information system (known as Lock and Track or LAT), "plaintiff never appealed the Review Level I decision of Warden Clyde Gainey regarding grievance No G092127 to Review Level II (i.e., Commissioner's Review).  Id. at ¶ 2q.  Indeed, there is no record evidence that plaintiff has ever "appealed any Review Level I decision of a PPS Warden to Review Level II."  Id. at ¶ 2r.

## STANDARD OF REVIEW

"A party may move for summary judgment at any time until 30 days after the close of discovery."  Fed. R. Civ. P. 56(c)(1)(A) (emphasis added).  "A party opposing the motion must file a response within 21 days after the motion is served or a responsive pleading is due, whichever is later."  Fed. R. Civ. P. 56(c)(1)(B).  A "district court retains the authority to decide whether a motion is ripe for consideration and determine whether or not to delay action on a motion for summary judgment."  St. Surin v. Virgin Islands Daily News, 21 F.3d 1309, 1313 (3d Cir. 1994).  "[T]o properly postpone summary judgment pursuant to Rule 56(f), a party must submit an affidavit setting forth, with specificity, the reasons for their inability to defend summary judgment."  Horn v. Kline, No. 06-1038, 2008 WL 2622911, at *3 (M.D. Pa. June 30, 2008).  "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protection of Rule 56(f) in good faith and to afford the trial court the showing necessary to assess the merit of a party's opposition."  Radich v. Goode, 886 F.2d 1391, 1394 (3d Cir. 1989)

(citation omitted).

The party moving for summary judgment has the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. A fact is "material" if it might affect the outcome of the case under governing law. Id.

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." Celotex, 477 U.S., at 322.

Pursuant to Federal Rule of Civil Procedure 56(e)(2), when a party fails to respond to a summary judgment motion, the Court may grant the moving party's motion "if appropriate." Fed. R. Civ. P. 56(e).  The Court of Appeals for the Third Circuit has held that a court may "appropriately" grant an unopposed motion for summary judgment as follows:

> [w]here the moving party has the burden of proof on the relevant issues, . . . the district court must determine that the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law.  Where the moving party does not have the burden of proof on the relevant issues, . . . the district court must determine that the deficiencies in the opponent's evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law.

Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990).

## DISCUSSION

### I.      Federal Constitutional Claims:  Failure to Exhaust

Defendants argue that plaintiff's federal claims against them fail as a matter of law because he failed to exhaust his administrative remedies.  Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997(e)(a).  The PLRA requires that inmates "properly" exhaust administrative remedies, which "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Woodford v. Ngo, 548 U.S. 81, 90-91 (2006). "Proper exhaustion of administrative remedies requires filing a timely or otherwise procedurally non-defective grievance."  Daniels v. Rosenberger, 386 F. App'x 27, 29 (3d Cir. 2010) (citation omitted).

On the record before me, plaintiff submitted a grievance alleging an assault by CO

Woodards on July 23, 2009, but his grievance was untimely, as it was submitted nearly a month

after the incident.  Dkt. No. 32 at ¶¶ 2e, 2p.  Even if this grievance had been timely, plaintiff has

not set forth any evidence that he appealed the Warden's review of this grievance to Review

Level II – review by the Philadelphia Prison System Commissioner.  Id. at ¶ 2q.  Nor has

plaintiff set forth any evidence that would allow me to conclude that he fully availed himself of

the Philadelphia Prison System inmate grievance process with respect to LT Holt's alleged

failure to intervene in the alleged assault by CO Woodards or with respect to the allegedly

improper strip search.  Defendants have offered sufficient evidence to establish that Plaintiff

failed to exhaust his administrative remedies, and Plaintiff has offered nothing in return to show

that there is a triable factual dispute material to this question.  Thus, I find it unnecessary to

examine the other grounds for summary judgment defendants raise in their motion regarding

plaintiff's federal constitutional claims.  I will grant summary judgment in favor of Defendants

on plaintiffs' section 1983 claims for violations of his rights under the Fourth, Eighth and

Fourteenth Amendments..

## II.     State Law Claims

### A.     PSTCA Immunity

Plaintiff's amended complaint also asserts state law claims for assault and battery and for

intentional infliction of emotional distress against defendants Holt, Woodards and John/Jane

Does 1-6, Dkt. No. 5 at ¶¶ 61-72.  Defendants first argue that they are immune from liability for

plaintiff's state law tort claims pursuant to the Pennsylvania Political Subdivision Tort Claims

Act.  To the extent that plaintiff asserts his claims against defendants in their official capacities, I

agree.  A judgment against the individual defendants in their official capacity would impose

liability on the City of Philadelphia.  Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("an

official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"

of which the officer is an agent).  The PSTCA immunizes the City from tort liability:  "no local

agency shall be liable for any damages on account of any injury to a person or property caused

by any act of the local agency or an employee thereof or any other person." 42 Pa. Cons. Stat.

Ann. § 8541.[4]  However, a willful misconduct exception exists to this immunity:  a public

official does not receive immunity when his action "constituted a crime, actual fraud, actual

malice or willful misconduct." 42 Pa. Cons. Stat. Ann. § 8550.  Under this provision, public

officials can be held liable in their individual capacity for intentional torts, such as intentional

infliction of emotional distress or assault and battery.

### B.    Intentional Infliction of Emotional Distress

Plaintiff has not met his burden to show that a genuine issue of material fact remains with

respect to his claim for intentional infliction of emotional distress. "To prove a claim of

intentional infliction of emotional distress, the following elements must be established: (1) the

conduct must be extreme and dangerous; (2) it must be intentional or reckless; (3) it must cause

emotional distress; (4) that distress must be severe." Hoy v. Angelone, 691 A.2d 476, 482 (Pa.

Super. Ct. 1997).  Extreme and outrageous conduct is conduct which is "so outrageous in

character, and so extreme in degree, as to go beyond all possibly bounds of decency, and to be

regarded as atrocious, and utterly intolerable in civilized society." Strickland v. Univ. of

Scranton, 700 A.2d 979, 987 (Pa. Super. Ct. 1997).  Plaintiff has not produced any evidence that

---

[4]    The PSTCA provides eight exceptions to this grant of immunity, none are
applicable to this case.  See 42 Pa. Cons. Stat. Ann. § 8542(b) (listing the following eight
categories: (1) vehicle liability; (2) care, custody, or control of personal property; (3) real
property; (4) trees, traffic controls, and street lighting; (5) utility service facilities; (6) streets;
(7) sidewalks; and (8) care, custody, or control of animals).

the conduct of LT Holt or CO Woodards was extreme or outrageous.

Further, according to the Supreme Court of Pennsylvania, to succeed on a claim for intentional infliction of emotional distress, "at the very least, existence of the alleged emotional distress must be supported by competent medical evidence." Kazatsky v. King David Memorial Park, Inc., 527 A.2d 988, 995 (Pa. 1987); see also Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 80 (3d Cir. 1989) ("Pennsylvania requires that competent medical evidence support a claim of alleged intentional infliction of emotional distress."). Plaintiff has produced no competent medical evidence to support his claim that defendants' conduct caused him emotional distress. Therefore, I will grant defendants' motion for summary judgment as to plaintiff's intentional infliction of emotional distress claim.

### C.    Assault and Battery

With respect to plaintiff's claim for assault and battery, to prevail, he must set forth proof that defendants acted knowing that what they were doing was unlawful: "willful misconduct means that the actor desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue," so that such desire can be implied. Evans v. Phila. Transp. Co., 212 A.2d 440, 443 (Pa. 1965); see also Renk v. City of Pittsburgh, 641 A.2d 289, 293-94 (Pa. 1984) (explaining the requisite state of mind of the arresting officer in determining whether or not his conduct constituted willful misconduct under section 8550 of the PSTCA). Gross negligence or recklessness is insufficient to substantiate a finding of willful misconduct. See McNeal v. Easton, 598 A.2d 638, 642 (Pa. Commw. Ct. 1991).

On the record before me there is no evidence that any defendant used force, assaulted or strip searched plaintiff with the knowledge that their conduct was unlawful. As defendants contend, "[i]n fact, the plaintiff pled guilty to assaulting LT Holt and CO Robinson, to recklessly

-12-

endangering CO Woodards, and to  possession of an illegal controlled substance"  Dkt. No. 32-1

at 16-17.  Accordingly, I will grant defendants' motion for summary judgment as to plaintiff's

claim for assault and battery.

An appropriate Order follows.